UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO:

AT LAW AND IN ADMIRALTY

RICHARD MARK ROTTI,

    Plaintiff,

v.

MSC CRUISES, S.A., a foreign corporation,
f/k/a MSC CROCIERE S.A. a foreign corporation,

    Defendant

_____/

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

The Plaintiff hereby sues the Defendant and files this Complaint for Damages, and says:

**THE PARTIES AND JURISDICTION**

1. This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

2. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state, and arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C.§ 1333, and is being filed in Federal Court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

3. The Plaintiff, RICHARD MARK ROTTI, is a resident of Vacaville, California.

4. The Defendant, MSC CRUISES, S.A., f/k/a MSC CROCIERE S.A. is a foreign corporation incorporated in Geneva Switzerland, authorized to do business in the State of Florida, and at all times material hereto, was and is doing business in Miami-Dade County, Florida.

5. The Defendant, at all times material hereto, personally or through an agent, in the County and in the District in which this Complaint is filed:

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or
    b. Had an office or agency in this state and/or county; and/or
    c. Engaged in substantial activity within this state; and/or
    d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7. **DATE OF INCIDENT.** This incident occurred on May 21, 2016, approximately 4:30 P.M.

8. **LOCATION OF INCIDENT.** This incident occurred onboard the *T/T MSC Divina* cruise ship on Deck 7.

9. Pursuant to the contract of passage, Plaintiff's claims are governed by the general maritime law of the United States. Plaintiff is not in possession of said contract.

## STATUS OF PLAINTIFF AS OF DATE AND TIME OF INCIDENT

10. At all Times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel. The Plaintiff is not in possession of the Passenger Contract Ticket. The Defendant is in possession of the Passenger Contract Ticket or a facsimile

thereof.

11.     **DESCRIPTION OF THE INCIDENT.** MSC Crociere S.A.is the manager, operator and owner of the *MSC Divina,* IMO Number 9585285. At the time of the incident described herein, the vessel was located on navigable waters in the Port of Miami.

12.     *MSC Divina* has an exterior deck on which MSC Crociere S.A., knows is an extremely high traffic deck on which many of the passengers visit daily. MSC Crociere S.A., also knows for these reasons it is crucial for passenger safety to keep the deck clean dry, as a wet deck is slippery and creates a hazardous condition for passengers.

12.     The incident occurred as a result of MSC Crociere S.A, actions in not drying the area near the exterior doorway on deck 7, and rain was allowed to be heavily tracked into the vessel, just inside the doorway, causing the floor on the inside of the port exterior side door on deck 7 to become wet. MSC Crociere S.A, also knows it must inspect the decks of the ship, especially the exterior decks, on a regular basis in order to prevent slippery and dangerous conditions. Additionally, MSC Crociere S.A., knows that when it, through its employees, mops the deck that it should cordon or block off that area of the deck, use drying fans, and post slippery when wet or other warning signs.

13.     On the date of this incident, as a result of the rain, and by allowing passengers to use the port side door on deck 7, which carpets did not sufficiently absorb the water from being further tracked onto the marble floor just, on the inside of the carpeted area, Plaintiff fell face first onto the hard marble floor, as he stepped onto the marble floor.

14.     On the date of incident, MSC Crociere S.A., employees allowed a wet area to be present over the flooring in the subject area of Deck 7. This area is a high-traffic area and poses a significant risk of danger to passengers. As Plaintiff approached the marble floor he fell face first, slipping on the water tracked from outside of deck 7.

## COUNT I NEGLIGENCE

15. The Plaintiff, RICHARD MARK ROTTI, hereby adopts and realleges each and every allegation in paragraphs 1 through 14, above.

16. **DUTIES OWED BY THE DEFENDANT.** The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 888 So. 2d 654 (Fla. 3d DCA 2004), 2004 A.M.C. 1913; citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); *The Moses Taylor*, 4 Wall. 411, 71 U.S. 411, 18 L. Ed. 397 (1866); *Carlisle v. Ulysses Line Ltd.*, 475 So. 2d 248 (Fla. 3d DCA 1985). The Defendant also owed a "duty to exercise reasonable care under the circumstances". See, *Harnesk vs. Carnival Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991). The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit." See, *Carlisle vs. Ulysses Line Limited*, *S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985). Vierling v. Celebrity Cruises, 339 F.3d 1309, 1319-20 (11th Cir. 2003)("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is nondelegable, and that even the 'slightest negligence' renders a carrier liable). The cruise line has a duty to provide safe ingress and egress to and from the ship. *Tittle v. Aldacosta*, 544 F.2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F.2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So.2d 853 (Fla. 3DCA 2004); and *Chan v. Society Expeditions*, 123 F.3d 1287 (9th Cir. 1997). More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D.Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F 3rd 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D.Fla.), citing *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1319 (11th Cir. 2003).

4

17. The Defendants breached those duties and was negligent by:

   a. Failing to keep the floor clean and dry to allow normal and safe foot traffic;

   b. Failing to inspect for, and to observe on a reasonably frequent basis, water, on the floor from whatever source;

   c. Observing that the flooring was wet and slippery with rain water but failing to clean and dry the flooring;

   d. Failing to clean and dry mop water and spills or areas of wetness from whatever source with dry mops, towels, blowers, and by other means

   e. Failing to warn that the floor was slippery and hazardous and/or wet by reasonable means including but not limited to properly and reasonably posting warning notices, signs, cones, or other devices in the area;

   f. Failing to provide a mat or other floor covering over the slippery floor to allow people who traverse the floor area to use at least a section of the floor;

   g. Failing to cordon or block off the wet and slippery area when it was discovered through reasonable inspection

   h. Failing to properly and reasonably train its employees in the proper methods of inspecting for wet areas, cleaning and drying wet area, warning of wet areas, blocking off wet areas, and monitoring the activities of people in the area;

   i. Failing to properly and reasonably monitor and control the activities of people in an area especially an area where Defendant knows is an area of high traffic and continuous problems;

   j. Failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one in this case;

   k. Allowing an ongoing, recurring, continuous and/or repetitive problem to occur or to remain on the premises which would cause accidents or injuries;

l. Providing negligent maintenance to the area or to the premises;

m. Failing to otherwise maintain the area and the premises in a safe and reasonable manner;

n. Designing and building and not changing the deck which allowed substances and water to accumulate in an area for an unreasonable amount of time;

o. Allowing substances and water to accumulate on decks;

p. Failing to comply with applicable standards, statutes, and/or regulations the violation of which is negligence per se and/or evidence of negligence;

q. Failure to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence; and

r. Failing to otherwise provide its passengers with a safe place to walk.

18. The Defendant created a dangerous condition on the subject ship and allowed the dangerous condition to exist thereby causing an accident on the date referenced above in which the Plaintiff was severely injured.

19. The Defendant either (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

20. The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the size and/or nature of the dangerous condition; and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

21. In the alternative, notice to the Defendant is not required because the Defendant (a) engaged in and was guilty of negligent maintenance; and/or (b) engaged in and was guilty of negligent methods of operations.

22. The negligent condition was created by the Defendant; and was known to the Defendant; and had existed for a sufficient length of time so that Defendant should have known of it; and was a continuous or repetitive problem thus giving notice to the Defendant and giving rise to a duty for the defendant to provide warning of said condition.

23. The negligent condition occurred with sufficient regularity so as to be foreseeable by the Defendant, and should have been foreseeable by the Defendant.

24. As a result of the Defendant's negligence, the Plaintiff has suffered bodily injury resulting in economic damages in the past and in the future including but not limited to loss of wages and income, loss of the ability or potential to earn money in the future, medical expenses for medical care and treatment, and physical therapy, and non-economic damages in the past and in the future including but not limited to pain, suffering, disability, physical impairment, mental anguish, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for **economic damages** in the past and in the future including but not limited to loss of wages and income, loss of the ability or potential to earn money in the future, medical expenses for medical care and treatment, and physical therapy, and **non-economic damages** in the past and in the future including but not limited to pain, suffering, disability, physical impairment, mental anguish, and loss of capacity for the enjoyment of life, all court costs, all interest under the maritime law or otherwise which accrues from the date of the

incident described herein, and any and all other damages which the Court deems just or appropriate.

Further, Plaintiff demands trial by jury of all issues so triable.

    Dated this 17th day of April 2017.

                                    ROBERT L. GARDANA, P.A.
                                    Attorneys for Plaintiff
                                    12350 SW 132 Court, #204
                                    Miami, Florida 33186
                                    PH: 305-358-0000
                                    FAX: 305-358-1680
                                    Gardanalaw@gmail.com

                               By: /s/ *Robert L. Gardana*
                                      Robert L. Gardana, Esq.
                                      Florida Bar No. 279668